### William AGNEW, et al Plaintiffs

v.

### WASHINGTON MUTUAL FINANCE GROUP, LLC Defendants

### No. 1:01–CV–206–M–D.

United States District Court, N.D. Mississippi, Eastern Division.

Jan. 30, 2003.

Brian Henry Neely, Brian H. Neely, Attorney, Tupelo, for William Agnew, Alice Anderson, Minnie Anderson, Daniel Batie, Cloteria Bean, Sadie Belk, William Below, Raymond Berry, Joe H. Gibson, Sherry Bogan, Donald Buchanan, James Buchanan, Gloria Buchanan, Terry Glenn, Valerie Glenn, Bessie Bullock, Roy Burnett, Mary Burnett, Angela S. Bobo, Joe L. Hamilton, Lorene Hamilton, Orlanda Calanese, Barbara Campbell, George Cannon, William Carter, Clay NMI Berry, Mary F. Collins, Daniel Dale, Helen Davis, Willie Digg, Pamela Clemons Dilworth, Francis Franklin, Perlinda Foster, Jimmy NMI Fields, Betty Fitzpatrick, Annie Flemming, Delana Ford, Gene Ford, Annette Foster, Eugene Gable, Marie Gable, Norman Gaillard, James Gillard, Rena Gillard, Joe H. Gibson, J.C. Buchanan, Veronica S. Golden, Edith MAE Homer, Betty J. Hampton, Beverly Hardeman, Vera Harley, Gregory Hill, Cassandra Hill Jones, Mary Vance Hill, L.S. Holmon, Paul Isbell, Millie Isbell, Gloria Jernigan, Elizabeth Johnson, Carleen Doss, Samuel F. Edgeton, Bryan Elliott, Jr., Jeffery Kente Jones, Marilyn Jones, Annie Judon, Sammie Judon, George Kendrick, Virgie Kendrick, Mary Keys, Christopher R. Knox, Linda NMI Leatherwood, Ottawa Smith, Jimmie Smith, R.L. Luster, Frankie Marion, Derick Martin, Michelle Martin, Richard Summers, Earline Summers, William McGee, Earleon McGee, Maxine McKinney, Willie Nolls, Michael Pate, Sharon Pate, Mack Peterson, Polly Peterson, Dollie Peterson, Bernice Pickens, J.V. Pickens, William F. Pickens, Earleon Pruitt, Paddie J. Prather, Hubert Riddle, Stella Johnson, William Johnson, Annie Lee Jones, Smith Rowe, Willie Sampson, Minnie Sampson, Charles F. Sanders, Carla Shackelford, Ruby Sharp, Evelyn Shumpert, Eddie Simpson, Gloria Love, Roy Spight, Wylie C. Stark, Walter Strong, Lizzie Strong, Robert McGee, Floria McGee, Willie James Stubbs, Melissa Tallie, Joyce Terry, Fannie MAE Tipler, Lillie Turner, Gus Vassar, Bradley Walls, Nancy Walls, Jearline M. Walls, Dorthy Walker, Joe Washington, Sarah Washington, Annie Lee Williams, Hazel Williams, Jacqueline W. Williams, Melissa Moore Riddle, Vonnella Woods, Elbert Woods, Gail S. Robinson, Herman Robinson, T.C. Rucker, Elizabeth NMI Rutherford, Robert E. Williams, Alice Robinson, Helen Quinn, James NMI Bullock, Janet Butcher, plaintiffs.

Katharine M. Samson, Dickinson Ros Samson & Nelms, PLLC, Johnny Leland Nelms, Dickinson Ros Samson & Nelms, PLLC, Gulfport, Daniel Leary, Washington Mutual Finance, Tampa, FL, for City Finance Company of Mississippi, Inc., Washington Mutual Finance Group, L.L.C., Successor By Merger to City Finance Company, defendants.

## MEMORANDUM OPINION

MILLS, District Judge.

This cause comes before the Court on the defendants' motion for summary judgment [38–1; 58–1]. The Court has reviewed the briefs and exhibits and is prepared to rule.

## FACTS

The plaintiffs originally included approximately 137 Mississippi residents who brought suit against City Finance Company of Mississippi on April 26, 2001 in the Monroe County Circuit Court. Since then, City Finance removed the case to federal court, a substantial number of plaintiffs have consented to arbitration, and about fifty plaintiffs remain party to this litigation. City Finance has also been replaced by Washington Mutual Finance Group, LLC ("WMFG"), its successor by merger.

The complaint raises a number of counts against WMFG, including breach of fiduciary duties, breach of implied covenants of good faith and fair dealing, fraudulent misrepresentation and/or omission, negligent misrepresentation and/or omission, civil conspiracy, negligence and unconscionability, all stemming from WMFG's sale of credit life insurance in conjunction with loans made to the plaintiffs. WMFG now moves for summary judgment.

## ANALYSIS

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In reviewing the evidence, this Court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). In so doing, the Court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 120 S.Ct. at 2110.

■ WMFG's first and most compelling argument for summary judgment is that all of the plaintiffs' claims are barred by Mississippi's general three-year statute of limitations contained in Miss.Code Ann. § 15–1–49(1). The plaintiffs filed suit on April 26, 2001, and since all the plaintiffs' claims relate to contracts entered into pri-

or to April 26, 1998, WMFG argues, all of those claims are time barred. The plaintiffs do not deny that their claims are more than three years old. Instead, they argue (1) that the statute of limitations does not begin to run on credit life policies and other similar policies until a claim is filed and (2) that the statute of limitations was tolled until the defendant's fraudulent inducement is discovered.

■ As an initial matter, the Court agrees with the plaintiffs that Mississippi courts treat credit life insurance schemes and conventional insurance schemes differently:

Credit life insurance has been recognized to be something different than the normal policy of life insurance. Generally, a policy of life insurance is a stand-alone contract whose purpose is to provide a sum of money to the named beneficiary upon the death of the listed insured. A credit life insurance policy, on the other hand, is an integral part of a financial transaction involving a loan, consumer financing arrangement, or other form of credit obligation, with repayment of the anticipated obligation typically extending over a number of months or years. As a part of the transaction, a policy of life insurance is arranged on the life of the debtor with the creditor named as beneficiary. The purpose of the policy is to retire the balance of a debt should the debtor die prior to the end of the contemplated repayment period.

In *Parnell v. First Savings & Loan Ass'n*, 336 So.2d 764, 767–68 (Miss.1976), the supreme court held that "the inclusion of credit life insurance in a lender-borrower transaction is not for the sole benefit of, nor at the option of the lender." The *Parnell* case further holds that under Mississippi law, "credit life insurance is also a very important and

vital part of the transaction to the borrower because it offers absolute protection to his estate for the unpaid balance of the debt in the event of his death before payment in full." *Id.* The distinct nature of credit life insurance has been recognized by the Mississippi Legislature, which has enacted separate insurance legislation regulating such contracts. *See* Miss.Code Ann. § 83–53–1 *et seq.* (Rev.1991).

*Barber v. Balboa Life Ins. Co.*, 747 So.2d 863, 866 (Miss.App.1999).

The plaintiffs cite no authority for their proposition that the statute of limitations was tolled until they had actually filed a claim on the credit life policy. However, the Court's own research reflects at least two cases which have held so, albeit under different facts. In *MIC Life Ins. Co. v. Hicks*, 825 So.2d 616, 622 (Miss.2002), the Mississippi Supreme Court held that a claim brought against an insurance company for retention of unearned premiums did not accrue until the actual denial of the plaintiff's claim for a refund. *See also Young v. Southern Farm Bureau Life Ins. Co.*, 592 So.2d 103, 107 (Miss.1991)(holding that wrongful refusal to pay insurance benefits triggers running of statute of limitations). On the other hand, in *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1202 (Miss.2001), the court held that a claim brought against an insurer for improperly backdating an insurance policy began to run when the plaintiff had received reasonable notice of the backdating and force-placement with the result that the plaintiffs' claims were time-barred.

The lengthy record before the Court does not indicate that any of the plaintiffs' claims are based on any wrongful refusal to pay. Rather, all the claims appear to be based on alleged misconduct which occurred during the formation of the insurance contracts. Such alleged misconduct included false representations that credit insurance was a prerequisite for getting a loan and breach of fiduciary duty by forcing the plaintiffs to purchase overly expensive insurance, as well as other similar complaints. All of the allegedly tortious conduct centered on the formation of the insurance agreements rather than on any later misconduct by WMFG, and the Court concludes that the statute of limitations began to run on the dates on which the various agreements were signed, all of which took place more than three years prior to the filing of the suit. Consequently, the Court concludes that the statute of limitations bars the plaintiffs absent a showing of fraudulent concealment.

■■■■ Claims of fraudulent concealment are governed by the following statutory language:

If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been first known or discovered.

Miss.Code Ann. § 15–1–67 (1972). Under Mississippi law, a party to a contract is obligated to read that contract before signing it, and cannot be heard to complain of an oral misrepresentation which would have been disclosed by reading the contract. *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.*, 584 So.2d 1254, 1257 (Miss.1991). When the terms of a contract are readily available to a contracting party, any reliance on an alleged misrepresentation of contract terms is unreasonable. *See Carter v. Union Security Life Ins. Co.*, 148 F.Supp.2d 734, 737 (S.D.Miss.2001).

In the case sub judice, the loan agreements signed by the plaintiffs contained the following conspicuous language: "Credit Life Insurance and Credit Disability Insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost." This section of the agreement also contains a separate blank for the borrower's signature and requires the borrower to actually check the box for the type of insurance desired. WMFG argues that the plaintiffs cannot rely on the doctrine of fraudulent concealment if they are presumed to have read the above-quoted language before signing up for credit life insurance regardless of what they now say they were told by loan agents. The Court agrees. Any reliance the plaintiffs may have placed in the oral statements of loan agents that were contradicted by the express language of the agreements was per se unreasonable, and such oral statements cannot constitute fraudulent concealment. Since the defendants offer no other basis for finding fraudulent concealment, the Court concludes that the doctrine does not apply in this case.

 Finally, the plaintiffs make the following somewhat odd statement in their responsive brief:

> It is clear under Mississippi law that the statute of limitations has not tolled in the instant case due to the fact that almost all of the plaintiffs involved in this case have indicated that they only became aware of their injuries by word of mouth in the community very shortly before joining in the instant action. This is an issue of fact, to be decided by the trier of fact.

The Court is not quite certain what to make of this argument but assumes that the plaintiffs are attempting to invoke the discovery rule, which tolls the statute of limitations until the plaintiff should have reasonably known of some wrongful conduct, even if the plaintiff does not know with absolute certainty that the conduct was legally tortious. *Sarris v. Smith,* 782 So.2d 721, 725 (Miss.2001)(clarifying application of discovery rule in context of negligence cases). *See also Smith v. Sanders,* 485 So.2d 1051, 1052 (Miss.1986)("The operative time [for the running of the statute of limitations] is when the [plaintiff] can reasonably be held to have knowledge of the injury itself, the cause of the injury, and the causative relationship between the injury and the conduct of the [defendant].")

In the case at bar, however, the Court agrees with the defendant that the plaintiffs must be held to have had knowledge of their injuries from time they were allegedly given misrepresentations by loan agents which contradicted the plain language of the contract. The Court does not accept the plaintiffs' premise that, even though they were charged with understanding the contracts they signed, the statute of limitations did not begin to run against them until they "became aware of their injuries by word of mouth in the community."

ACCORDINGLY, the Court finds that the statute of limitations is applicable and as such, the defendants' motion for summary judgment [38–1, 58–1] is GRANTED. A separate order to that effect shall issue this day.

### *ORDER GRANTING MOTION FOR SUMMARY JUDGMENT*

Pursuant to the memorandum opinion issued this day, the defendant's motion for summary judgment [38–1, 58–1] is GRANTED.