Merdis ANDERSON, et al., Plaintiffs

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES; Equitable Variable Life Insurance Company; Nichols & Associates; George C. Bell; Phillip Kempkes; Elizabeth Nichols; John A. Sartin; Louie Robinson, et. al., Defendants

No. CIV.A. 302CV1566BN.

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 27, 2003.

Fredrick B. Clark, Clark Law Office, Greenwood, Michael D. Hickman, Taylor, Martino & Hedge, P.C., Mobile, AL, for Merdis Anderson, Nancy G. Banks, Ethel B. Bowen, Norman Burke, Jr., Lucy W. Ellis, Douglas Green, Reida S. Hanfor, Johnny Hendrix, Deborah Hudson, Warrene Johnson, Robert O. Rollins, Everett L. Seaton, Sheila Winters, Michael D. Wyatt, plaintiffs.

Anne C. Sanders, Sheldon Givens Alston, Andrea La'Verne Edney, Robert L. Gibbs, Amy M. Klotz, Claire W. Ketner, Brunini, Grantham, Grower & Hewes, Roy A. Smith, Jr., Laura Henderson–Courtney, Daniel, Coker, Horton & Bell, David A. Barfield, Lara Ashley Coleman, Barfield & Associates, Jackson, for Equitable Life Assurance Society of the United States, Equitable Variable Life Insurance Company, Nichols & Associates, George C. Bell, Phillip Kempkes, Elizabeth Nichols, John A. Sartin, Louie Robinson, John Does, A,B,C, person, agency and/or corporation; D,E, F, firms partnerships and/or corporation; G,H,I,J,K,L,M,N, individuals, partnerships or corporations; all of defendants names and true legal identities are unknown to the plaintiffs at this time and will be substituted by amendment when ascertained., defendants.

### OPINION AND ORDER

BARBOUR, District Judge.

Before the Court is the Motion of Plaintiffs to Remand. Having considered the Motion, Response, Rebuttal, attachments to each, and supporting and opposing authority, the Court finds that the Motion is well taken and should be granted.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs allege that they were each sold insurance policies by Defendants. Plaintiffs have sued Equitable Life Assurance Society of the United States, Equitable Variable Life Insurance Company (collectively, "Equitable"), and several individual agents of Equitable ("Agent Defendants").

Although the facts alleged by each Plaintiff vary, Plaintiffs generally allege

that the Agent Defendants made the following representations regarding the policies purchased by Plaintiffs: that the policies were savings plans, retirement plans, or college tuition plans (collectively, "savings plans") that included a life insurance product, that the savings plans were investment vehicles that would increase in value and/or accrue cash value; that Plaintiffs could withdraw money from the savings plans without a reduction in coverage provided by the life insurance portion of the policies; and that the accumulated cash value of the life insurance portion of the policies represented the value of the savings plans. Several Plaintiffs [1] also allege that the Agent Defendants represented that the policies would accumulate dividends and interest in an amount sufficient to pay all premiums required by the policies. Plaintiffs claim that all of the above representations were false.

Plaintiffs allege that the Agent Defendants supported the above representations by producing various policy illustrations and sales materials that purported to demonstrate the value of the savings plans, based on then-existing investment experience. Plaintiffs allege that the illustrations and materials were actually based on inflated dividend assumptions and artificial actuarial computations that were intentionally manipulated to portray an inaccurately favorable return on the savings plans.

In summary, Plaintiffs allege that the Agent Defendants fraudulently induced them into purchasing various insurance products, and they seek to hold the Agent Defendants individually liable. Plaintiffs also claim that the Agent Defendants and Equitable should be held jointly and individually liable. Plaintiffs seek to hold Defendants liable for breach of fiduciary duty, intentional and/or reckless fraud, fraud by suppression and/or concealment, and negligent and/or wanton misrepresentation and suppression.

All Plaintiffs to this suit are citizens of the State of Mississippi. Both Equitable Defendants are corporate citizens of a state other than Mississippi. The Agent Defendants are each citizens of the State of Mississippi.[2] The amount in controversy exceeds $75,000. Defendants have removed the suit to this Court on the basis of diversity jurisdiction, arguing that Plaintiffs have fraudulently joined the Agent Defendants in order to defeat diversity jurisdiction. Plaintiffs have filed the present Motion to Remand, arguing that they have stated valid claims under Mississippi law against the non-diverse Agent Defendants.

## II. FRAUDULENT JOINDER STANDARD

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed ... to the district court of the United States for the district and division embracing the place where such action is pending." The removing party has the burden of proving that the federal court has jurisdiction to hear the case. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir.1993), *cert. denied*, 510 U.S. 868, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993); *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir.1989) (holding that the "removing party bears the burden of establishing federal jurisdiction."). In cases in which the removing party alleges diversity of citizenship jurisdiction on the basis

---

1. This allegation is made by Plaintiffs Merdis Anderson, Nancy Banks, Norman Burke, Jr., Lucy Ellis, Douglas Green, Deborah Hudson, and Warren Johnson.

2. Included as an Agent Defendant for purposes of this decision is Defendant Nichols & Associates, a corporate citizen of the State of Mississippi.

of fraudulent joinder, "it has the burden of proving the fraud." *Laughlin,* 882 F.2d at 190; *Carriere v. Sears, Roebuck & Co.,* 893 F.2d 98, 100 (5th Cir.1990), *cert. denied* 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). To establish fraudulent joinder, the removing party must prove: (1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court. *Griggs v. State Farm Lloyds,* 181 F.3d 694, 699 (5th Cir.1999) (citations omitted); *Burden v. General Dynamics Corp.,* 60 F.3d 213, 217 (5th Cir.1995); *Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir.1995).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts should "pierce the pleadings" and consider "summary judgment-type evidence such as affidavits and deposition testimony." *See e.g. Cavallini,* 44 F.3d at 256. *See also LeJeune v. Shell Oil Co.,* 950 F.2d 267, 271 (5th Cir.1992) (holding that "a removing party's claim of fraudulent joinder to destroy diversity is viewed as similar to a motion for summary judgment.... A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties."). Under this standard, plaintiffs "may not rest upon the mere allegations or denials of [their] pleadings." *Beck v. Texas State Bd. of Dental Examiners,* 204 F.3d 629, 633 (5th Cir.2000). *See also Badon v. RJR Nabisco, Inc.,* 236 F.3d 282, 286 n. 4 (5th Cir.2000) (finding that the "mere theoretical possibility of recovery under local law" does not preclude removal. "[T]here must at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder."). Further, conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that the defendant was not fraudulently joined. *See Badon v. RJR Nabisco, Inc.,* 224 F.3d 382, 392–93 (5th Cir.2000); *Peters v. Metropolitan Life Ins. Co.,* 164 F.Supp.2d 830, 834 (S.D.Miss. 2001) (J. Bramlette) (holding that the allegations against non-diverse defendants "must be factual, not conclusory, because conclusory allegations do not state a claim."). Therefore, removal is not precluded merely because the state court complaint, on its face, sets forth a state law claim against a non-diverse defendant. *See Badon,* 224 F.3d at 390. Removal is proper "if the plaintiff's pleading is pierced and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant." *Id.*

When conducting a fraudulent joinder analysis, a court must resolve all disputed questions of fact and ambiguities of law in favor of the non-removing party, *see Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992), but "*only* when there exists an actual controversy, i.e. when *both* parties have submitted *evidence* of contradictory facts." *Badon,* 224 F.3d at 394 (alteration in original). A court should not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to support his claims against the non-diverse defendant. *Id.* (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). In the event the court, after resolving all disputed questions of fact and ambiguities of law in favor of the non-removing party, finds that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder" and hence no basis for asserting

diversity of citizenship jurisdiction. *Jernigan,* 989 F.2d at 816.

## III. ANALYSIS

### A. STATUTE OF LIMITATIONS

The parties agree that all claims herein are governed by a three-year statute of limitations. *See* Miss.Code Ann. § 15–1–49. The parties also agree that each Plaintiff's claims arose at the time that Plaintiff purchased his policy. All Plaintiffs' claims arose prior to September, 1999, and thus fall outside the three-year statute of limitations. However, Plaintiffs argue that the doctrine of fraudulent concealment serves to toll the statute of limitations, so that their causes of action are not time barred.

 Under Mississippi law, a showing of fraudulent concealment such as will toll the statute of limitations requires " 'some act or conduct of an affirmative nature designed to prevent and which does prevent discovery of the claim.' " *Robinson v. Cobb,* 763 So.2d 883, 887 (Miss.2000) (quoting *Reich v. Jesco, Inc.,* 526 So.2d 550, 552 (Miss.1988)). The plaintiff must also be able to show that he used due diligence to discover the fraud but was unable to do so. *Robinson,* 763 So.2d at 887. Due diligence ordinarily requires the plaintiff to make the best use of the facts available to him.

Here, Plaintiffs have alleged affirmative acts of concealment by the Agent Defendants. For example, Plaintiff Merdis Anderson alleges that "the Resident Defendant, Elizabeth Nichols, represented to the Plaintiff that if she paid a monthly premium of $20.19 for seven years, this policy would be fully paid up and she would no longer need to pay premiums to keep this policy in force." Complaint, ¶ 44.

See also, e.g., Complaint, ¶¶ 45, 46, 48, 49, 51, 52, and 53.[3]

 The rule in Mississippi is that "a person is under an obligation to read a contract before signing it, and will not as a general rule be heard to complain of an oral misrepresentation the error of which would have been disclosed by reading the contract." *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.,* 584 So.2d 1254, 1257 (Miss.1991). Furthermore, Mississippi law recognizes that contracts must generally be enforced pursuant to the written terms therein. Thus, "to permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." *Turner v. Terry,* 799 So.2d 25, 36 (Miss.2001) (internal brackets and quotation marks omitted). In further support of the policy of enforcing the written terms of the contract, knowledge of the contents of a contract are imputed to the parties thereto, even where they have not read the contract. *Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416, 419 (Miss.1987).

 In summary, Mississippi law creates a duty on contracting parties to read their contracts, and imputes the knowledge of that contract to the parties. Once signed, the written terms of the contract control. *See Godfrey,* 584 So.2d at 1257; *Turner,* 799 So.2d at 32. Questions regarding interpretation of the contract should be resolved by the language of the contract. *Godfrey,* 584 So.2d at 1257. The intent of the "contracting parties should be gleaned solely from the wording of the contract." *Turner,* 799 So.2d at 32.

---

**3.** The Complaint includes many allegations sufficient to allege affirmative acts of fraudulent concealment. The citations noted by the Court are merely taken from allegations made by three of the Plaintiffs.

The court will generally not consider prior oral agreements, misunderstandings between the parties, or any other form of parol evidence. *Id.; Godfrey*, 584 So.2d at 1257.

■ However, the Supreme Court of Mississippi has recognized exceptions to the general rule. One such exception is recognized pursuant to the adoption of the Uniform Commercial Code ("UCC"). The UCC allows for the introduction of parol evidence to explain or supplement a contract in certain circumstances. Miss.Code Ann. § 75–2–202. A second exception is recognized in circumstances where "a party alleges that his entry into a contract was procured by fraudulent representations." *Turner*, 799 So.2d at 33. Where such allegations are made,

> parol evidence is admissible to show that the making of a written contract was procured by fraudulent representations. Evidence of this kind does not vary the written contract; it destroys and avoids it. It impeaches the written contract. Its purpose is to show that there was no valid, written contract, and a provision in a written contract that it contains all the stipulations entered into by the parties does not add anything to its strength.

*Id.* at 33–34 (quotation marks omitted). Thus, if "fraud is properly pled, prior oral representations/negotiations are admissible to prove the real intent of the contracting parties." *Id.* at 34 (emphasis in original) (quotation marks omitted).

The fraud exception to the parol evidence rule is similarly applied to the general rule imposing a duty to read one's contract. The Supreme Court of Mississippi approved of the following language as "sound law" in describing the exception:

> As a general proposition, equity will not act to rescind a contract where the mistake was induced by the negligence of the party seeking rescission. Further-

more, parties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence. There is, however, an exception to the above stated rule. Where one party's false representations induce another party to contract, negligence of the second party cannot be raised to bar relief to him. Thus, failure to read a contract before signing it, although it may constitute negligence, will not bar equitable relief to one who has executed a contract in reliance upon false representations made to him by the other contracting party. This equitable rule applies whether rescission is sought under a fraud theory or a mistake theory. Similarly, the rule operates on innocent as well as intentional misrepresentations.... [A] party's own negligence should not bar him from seeking equitable relief from a contract executed in reliance upon the false representations of the other contracting party.

*Godfrey*, 584 So.2d at 1259 (internal citations omitted); *see also* Restatement (Second) of Contracts (1981) §§ 152, 155, 157, 166.

Courts have recognized the fraudulent inducement exception under Mississippi law for many years. *See, e.g., Turner*, 799 So.2d 25 (Miss.2001) (court recognizes exception for fraudulent inducement, but finds evidence insufficient); *Godfrey*, 584 So.2d 1254 (Miss.1991)(finding for plaintiff who was induced into entering contract by innocent misrepresentation); *Martin v. Winfield*, 455 So.2d 762 (Miss.1984) (court recognizes exception for fraudulent inducement, but finds the evidence insufficient); *Johnson v. Brewer*, 427 So.2d 118 (Miss.1983) (80–year–old man with limited reading ability had no duty to read his contract or have it read to him, because he was fraudulently induced into entering the contract); *Baggett v. Furst Corp.*, 357 So.2d 321 (Miss.1978)(plaintiff fraudulently in-

duced into contract by false representations); *Parker v. Howarth*, 340 So.2d 434 (Miss.1976) (agent fraudulently induced plaintiff to enter contract by making false representations to plaintiff, who was illiterate and hospitalized); *Crawford v. Smith Brothers Lumber Co., Inc.*, 274 So.2d 675 (Miss.1973) (court recognizes exception for fraudulent inducement, but finds the evidence insufficient); *Hunt Oil Co. v. Berry*, 227 Miss. 234, 86 So.2d 7 (1956) (agent fraudulently induced plaintiff into entering contract where plaintiff asked agent to explain contract to him before signing it, and agent's explanations included false representations); *Mississippi Power Co. v. Bennett*, 173 Miss. 109, 161 So. 301 (1935) (plaintiff was fraudulently induced into investment by oral misrepresentations); *White v. Union Producing Co.*, 140 F.2d 176 (5th Cir.1944) (finding fraudulent inducement because plaintiff had a right to rely on representations made by the agent to induce him into contract, and to accept the agent's statements as true, and distinguishing between "the case of an individual who imprudently executes a contract without reading it, and of one who signs a contract in reliance upon fraudulent misrepresentations as to its contents").

 Here, Plaintiffs have alleged facts sufficient to invoke the fraudulent inducement exception. Plaintiffs' allegations arise almost entirely out of false representations made by the Agent Defendants to the Plaintiffs to induce the Plaintiffs to enter into contracts.

Defendants claim that the policies in question provided Plaintiffs with information that includes the terms of the policies and the amount and duration of premium payments. Defendants have failed to di-

rect the Court to any specific language indicating that the policies are unambiguous. Plaintiffs claim instead that the policies in question used language that reinforced misrepresentations made by Agent Defendants. Plaintiffs have directed the Court to specific language to support their claims. *See, e.g.*, Complaint, ¶ 33; *see also* Rebuttal of Plaintiffs, p. 7.[4] Given Mississippi precedent supporting a claim for fraud where the plaintiff did not read the contract but instead relied on the agent's misrepresentations, and based on the record before the Court, and resolving all ambiguities in favor of Plaintiffs, the Court finds that Plaintiffs have stated an arguably reasonable basis that they can establish fraudulent concealment.

This Court has previously held that claims of deceptive sales practices leading plaintiffs to buy "vanishing premium" policies, and deceptive assurances from agents that the policies were self-paying, may be sufficient to state claims of fraudulent concealment to toll the statute of limitations. *See Chain v. New England Mut. Life Ins. Co.*, No. 3:98CV349BN (S.D.Miss. Dec. 11, 1998); *Poole v. New England Mutual Life Insurance Company*, No. 3:01CV313BN (S.D.Miss. July 26, 2001).

In *Chain*, the plaintiffs alleged post-sale acts that supported their claim of fraudulent concealment beyond those misrepresentations that allegedly occurred at the point of sale. In *Poole*, Plaintiffs only generally alleged "affirmative acts of fraudulent concealment after the sales." *Poole*, at 13. Here, Plaintiffs allege that Defendants committed affirmative acts of fraudulent concealment after the point of sale

---

**4.** The Court is aware that in *Jenkins v. Protective Life Ins. Co.*, No. 4:00CV167LN, (S.D.Miss. Apr. 23, 2001), Judge Lee found that plaintiffs had failed to show due diligence, and thus refused to apply the doctrine of fraudulent concealment to toll the claims there. However, in *Jenkins*, the plaintiffs received both policies and annual statements which unambiguously contradicted the misrepresentations of the agents. *Id.* at 9.

by sending Plaintiffs annual policy summaries. These policy summaries contained the language "account," "minimum withdrawal," "saving for retirement," and "saving for my child's college education," and as such, they were designed by the Defendants to confirm the misrepresentations and/or omissions made by the Resident [Agent] Defendants during the sales presentations made to the Plaintiffs.... The [Agent] Defendants further fraudulently concealed Plaintiffs' causes of action by suppressing the material fact that the Defendants' policy illustrations and sales materials were based on inflated dividend assumptions and artificial actuarial computations."

Complaint, ¶ 33.

■ It is unnecessary for the Court to determine whether these allegations of post-sale acts of fraudulent concealment are adequate to sustain Plaintiffs' claims of fraudulent concealment for two reasons. First, Mississippi has not yet decided whether subsequent affirmative acts of fraudulent concealment are required where the underlying bad act is itself alleged to be fraud. *See Phillips v. New England Mut. Life Ins. Co.*, 36 F.Supp.2d 345, 349 (S.D.Miss.1998) (Lee, J.). Second, "[f]raudulent concealment need *not* be pled with particularity or specificity." *Neely v. Union Natl. Ins. Co.*, No. 3:01CV918BN (S.D.Miss. Sept. 18, 2002) (emphasis in original). Therefore, the Court finds that Plaintiffs have stated an arguably reasonable basis for determining that the statute of limitations governing their claims has been tolled by fraudulent concealment, and that their claims are not time barred.

### B. FRAUD CLAIMS

■ "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Miss. R. Civ. P. 9(b). These circumstances include the time, place, and contents of the fraudulent representation. *Allen v. Mac Tools, Inc.*, 671 So.2d 636, 642 (Miss.1996).

> The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximate injury.

*Allen*, 671 So.2d at 642.

■ The Complaint alleges that Agent Defendants each made (1) a representation about the nature of the policies in question that (2) was not true, and (3) induced each Plaintiff to buy a policy that was (4) deliberately presented to each Plaintiff by each Agent Defendant in full knowledge of its falsity, with (5) the intent that Plaintiff should buy a policy based on the false representation. Plaintiffs further allege that they (6) did not know that the representation was false, and (7) relied on presentations that were prepared by Equitable and delivered by the Agent Defendants, (8) having the right to rely on the representations by Agent Defendants with apparent authority, and (9) suffered financial injury as a direct result. Resolving all factual conflicts in Plaintiffs' favor, the Complaint covers all the elements of fraud and satisfies the pleading requirements of Rule 9(b) of the Federal and Mississippi Rules of Civil Procedure.

Defendants argue that Plaintiffs have not met their obligation of pleading the time, place, and content of the alleged misrepresentations. The Court disagrees.

Plaintiffs in many instances have provided exact times, dates, and addresses regarding the alleged misrepresentations. In light of precedents of both Mississippi and federal courts, Plaintiffs have satisfied their pleading requirements. *See, e.g., Allen v. Mack Tools, Inc.*, 671 So.2d 636, 642 (Miss.1996); *Brabham v. Brabham*, 483 So.2d 341 (Miss.1986); *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir.1992). Defendants further argue that Plaintiffs have failed to establish a right to rely on the misrepresentations of the Agent Defendants. In support of this argument, Defendants cite several cases for the proposition that a plaintiff may not state a fraud claim where documents presented to the plaintiff contradict the alleged oral misrepresentation of an agent. *See Harrison v. Commercial Credit Corp.*, 2002 WL 548281 at *3 (S.D.Miss.2002) (Lee, J.); *Howard v. CitiFinancial*, 195 F.Supp.2d 811, 820 (S.D.Miss.2002); *Ross v. CitiFinancial*, 2002 WL 461567 at *4 (S.D.Miss. 2002); *Carter v. Union Security Life Ins. Co.*, 148 F.Supp.2d 734, 735–36 (S.D.Miss. 2001)(Lee, J.); *Watson v. First Commonwealth Life Ins. Co.*, 686 F.Supp. 153, 155 (S.D.Miss.1988).

In each of the cases cited by Defendants, the record indicated that policy or contract language unambiguously contradicted the alleged oral misrepresentations. In the case *sub judice*, that is not the case. Furthermore, none of the cases cited by Defendants involved the application of the fraudulent inducement exception as stated in *Johnson v. Brewer* and discussed previously in this Opinion by the Court.

In light of the foregoing, the Court finds that Plaintiffs have at least an arguably reasonable basis for recovering against Defendants on their claims of fraudulent misrepresentation. The existence of one claim suffices to render the entire action unremovable on diversity grounds. *See* 28 U.S.C. § 1441(c); *Luevano v. Dow Corn-*

*ing Corp.*, 895 F.Supp. 135, 137 (W.D.Tex. 1994) ("the unit of measure for determining diversity is the case as a whole"). Accordingly, the other claims alleged by Plaintiffs need not be considered here, and the Motion to Remand must be granted.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the Motion of Plaintiff to Remand [9–1] is hereby granted in accordance with Title 28 U.S.C. § 1447(c). This case shall be remanded to the Circuit Court of Holmes County, Mississippi, with each party bearing its own costs.